IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PUBLIC SERVICE COMPANY OF )
OKLAHOMA, )
 )
      Plaintiff, )
 )  Case No. 15-CV-321-JED-FHM
v. )
 )
AUSTIN POWER, INC., )
 )
      Defendant. )

## OPINION AND ORDER

**I.    Background**

On July 18, 1968, the plaintiff, Public Service Company of Oklahoma (PSO), entered into a Contract with Austin Building Company, the predecessor to the defendant, Austin Power, Inc. Pursuant to the Contract, Austin Building Company was to perform the mechanical construction work for an addition to PSO's Northeastern Power Station near Oologah, Oklahoma. (Doc. 2-1 at 31 of 81). Paragraph 3 of the Contract provides:

> Contractor [Austin Building Company] undertakes the performance of this Contract as an independent contractor, as [sic] its sole risk and assumes full responsibility for the safety of the work hereunder and all liability for injury or damage to the person or property of any and all persons whomsoever in any way growing out of the performance of this Contract, and shall defend, indemnify and save Company [PSO] harmless of and from any and all claims, demands, suits, loss, cost or expense or any damage which may be asserted, claimed or recovered against or from Company by reason of any damage to property or injury, including death, sustained by any person whomsoever and which damage, injury or death arises out of or is incident to or in any way connected with the performance of this Contract regardless of whether or not claim, demand, damage, loss, cost or expense is caused in whole or in part by the negligence of Company, Contractor, any subcontractor or by a third party or by the agents, servants, employees or factors of any of them.

(*Id.* at 31-32 of 81, ¶ 3).

Robert McDoulett was employed by Austin Building Company as a pipefitter when he was allegedly exposed to asbestos insulation between July and December 1968 while working at PSO's Northeastern Power Station. Mr. McDoulett was later diagnosed with mesothelioma – a disease commonly linked to asbestos exposure – and he died on December 30, 2012. On July 9, 2013, Mr. McDoulett's wife, who was the personal representative of his estate, filed suit in Oklahoma County District Court against numerous entities, including PSO, who were thought to be responsible for McDoulett's exposure to asbestos. On April 14, 2014, PSO made demand upon Austin Building Company under the Contract, but received no response. In May, 2014 PSO reached a settlement of the McDoulett litigation, for a payment of $187,500. PSO also expended approximately $70,000 in fees and costs in the McDoulett case. After further research, PSO determined that Austin Building Company had merged into defendant Austin Power, and PSO thus made demand upon Austin Power. Austin Power did not respond, and PSO then filed this lawsuit, alleging claims for breach of contract and indemnity under the Contract.

Austin Power has moved for judgment on the pleadings. (Doc. 18). The sole issue presented by the motion is whether plaintiff's claims in this case, which are premised on the 1968 Contract's indemnity clause, are prohibited by a statute enacted by the Oklahoma Legislature in 2006. In relevant part, the statute at issue provides that

> any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify, insure, defend, or hold harmless another entity against liability for damage arising out of death or bodily injury to persons, or damage to property, which arises out of the negligence or fault of the indemnitee, its agents, representatives, subcontractors, or suppliers, is void and unenforceable as against public policy.

*Okla. Stat.* tit. 15, § 221(B). The parties here do not dispute that the 1968 contract satisfied the statutory definition of a "construction agreement" under *Okla. Stat.* tit. 15, § 221(A), and PSO does not dispute that, if the statute applies to this action, it would foreclose PSO's claims.

2

**II.     Standards**

A motion for judgment on the pleadings is governed by the same standard that is applicable to a Rule 12(b)(6) motion to dismiss. *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013). Accordingly, a district court must accept all of the plaintiff's well-pleaded allegations as true, even if doubtful. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive, a pleading must contain "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570.

**III.    Discussion**

When a federal court interprets state law, it must apply the state's rules of statutory construction. *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007); *see also Rural Water Dist. No. 4, Douglas Cty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269, 1276 (10th Cir. 2013) (applying Kansas retroactivity principles to interpret a Kansas statute). Thus, in determining whether the Oklahoma anti-indemnity statute, *Okla. Stat.* tit. 15, § 221(B), bars PSO's claims, the Court must first determine whether the statute is to be given retroactive effect under Oklahoma law.[1] The enacting legislation for the statute stated that it "shall become effective November 1, 2006." 2006 Okla. Sess. Law Serv. Ch. 323, § 2 (West). Under Oklahoma law, "[n]ew legislation operates prospectively only 'unless the Legislature clearly expresses a contrary intent. If doubt exists, it must be resolved against a retroactive effect.'" *Crawford v. Guardian Life Ins. Co.*, 954 P.2d 1235, 1238 (Okla. 1998) (quoting *Forest Oil Corp. v. Corp. Comm'n of Okla.*, 807 P.2d 774, 781 (Okla. 1990)). Here, there is no indication that the Oklahoma Legislature intended any retroactive effect. The statute itself is silent on the issue.

---

[1] The parties in this case have stipulated that "Oklahoma substantive contract law applies." (Doc. 16 at 2).

The Legislature did not provide any date other than November 1, 2006, the effective date of the statute. There is also no indication in case law or legislative history that the anti-indemnity statute was intended to operate retrospectively.[2] Given that any doubt "must be resolved against a retroactive effect," *Crawford*, 807 P.2d at 781, the Court concludes that the statute does not operate retroactively.

That does not end the inquiry, because Austin Power argues that the statute need not be applied retroactively in order to void PSO's indemnity rights under the Contract. According to Austin Power's argument, PSO's indemnity claim did not arise until 2013 when it was sued by Mr. McDoulett's estate, such that the 2006 statute would apply *prospectively* to void PSO's contractual indemnity right or render it unenforceable. In other words, Austin Power contends that – because PSO's indemnity claim did not accrue until 2013 – before then, PSO only "had at best a generalized future expectation interest," as opposed to a vested contractual right to indemnity. (Doc. 20 at 6). However, in *Crawford*, 954 P.2d at 1237-38, the Oklahoma Supreme Court rejected an argument similar to that asserted by Austin Power in this case.

In *Crawford*, Guardian Life Insurance and the predecessor to American Standard Life Insurance Company were parties to a 1986 reinsurance agreement that "gave Guardian the right to offset." 954 P.2d at 1237. Effective November 1, 1988, an Oklahoma statute "fundamentally

---

[2] The Tenth Circuit noted its view that anti-indemnity language in a New Mexico statute applicable to equipment contracts did not apply retroactively. *United Rentals Northwest v. Yearout Mech.*, 573 F.3d 997, 1003, n.1 (10th Cir. 2009). There, the court applied New Mexico's rule of statutory construction, which is very similar to Oklahoma's, "that a statute applies prospectively only 'absent a clear intention to the contrary.'" *Id.* (quoting *Howell v. Heim*, 882 P.2d 541, 547 (N.M. 1994)); *see Crawford*, 954 P.2d at 1238 ("legislation operates prospectively only unless the Legislature clearly expresses a contrary intent") (quoting *Forest Oil Corp.*, 807 P.2d at 781). The language of the New Mexico anti-indemnity statute is also similar to the Oklahoma statute at issue here. *See N.M. Stat.* § 56-7-3(A) (2007). While not controlling on the interpretation of Oklahoma law, the Court finds the Circuit's reasoning persuasive in light of the similarities of the Oklahoma and New Mexico statutes and rules of construction.

changed the law and deprived . . . a reinsurer of the right to offset its debts against amounts owed to it by a failed insurer where the insurer's debt was the result of a reinsurance agreement that was 'structured so as to avoid reasonable risk transfer and indemnification criteria.'" *Id.* (quoting *Okla. Stat.* tit. 36, § 1928 (1988)). Three years later – after American Standard Life became insolvent in 1991 – American Standard Life's receiver sued Guardian and sought a declaratory judgment that Guardian had no right to offset claims against premiums under its reinsurance agreement, in light of the 1988 statute. *Crawford*, 954 P.2d at 1237. The Oklahoma Life and Health Insurance Guaranty Association intervened in the case on the side of the receiver, because the Guaranty Association was the guarantor of any payment of claims on American Standard Life policies held by Oklahoma residents. *Id.* The court framed the issue in the case as whether the statute may "be applied retroactively so as to deprive Guardian of its contractual right of setoff[]," and the court held that it could not be applied retroactively. *Id.*

Similar to the argument made by Austin Power, the Guaranty Association in *Crawford* argued that the application of the statute was not retroactive because it could not be applied until after American Standard Life was placed into receivership, which occurred in 1991, after the 1988 effective date of the statute. *See id.* at 1238, 1242. The court rejected that argument:

> The Guaranty Association argues that the statute was not applied retroactively because it could not be applied until after American Standard Life was placed in receivership, and Guardian's rights against American Standard Life and its rights against the Receiver as receiver of American Standard Life's insolvent estate are two different things. This argument fails for two reasons: First, it ignores that the effect of applying the statute would have been to rewrite Guardian's contract. Second, if the statute did not have retroactive application because it did not come into play until American Standard Life's insolvency it could never apply retroactively. This argument, once again, ignores the fact that Guardian's rights to setoff were based on a contract made long before the Legislature passed § 1928.B.4.

*Crawford*, 954 P.2d at 1238.

The court also rejected an alternative argument that the statute could apply retroactively because it only affected a remedy rather than a substantive right:

> Both the Receiver and the Guaranty Association argue that the statute could be applied retroactively because it affected only Guardian's remedies. If a statute affects only a remedy and not a substantive right it will be held to apply retroactively, *Forest Oil Corp.* 807 P.2d at 781, but this rule does not apply here because the effect of applying the statute would have been to rewrite Guardian's contract. Thus, Guardian's substantive rights would have been affected, not merely its remedies.

*Id.*; *see also generally Wickham v. Gulf Oil Corp.*, 623 P.2d 613, 616 (Okla. 1981) (noting statutory construction principles that ordinarily mandate that a statute must not be applied retroactively where to do so would alter rights and duties under existing contracts); *Teel v. Pub. Serv. Co. of Oklahoma*, 767 P.2d 391, 399 (Okla. 1985) ("Without express legislation, a statute may not be applied retroactively if it alters the rights and duties under an existing contract, especially if the enactment would affect vested rights or the legal character of past transactions would be prejudiced"). Thus, contrary to the arguments of the receiver and the Guaranty Association in *Crawford*, the Oklahoma Supreme Court held that (a) in order to divest Guardian of its contractual right of offset, the statute would have to be applied retroactively under the facts, but (b) the statute did *not* apply retroactively because there was no indication that the Legislature intended that the statute be given retroactive effect. 954 P.2d at 1237-38.

The particular facts pled by PSO support a similar result in this case. Mr. McDoulett was allegedly exposed to asbestos at PSO's Northeastern Power Station between the date of the Contract, July 18, 1968, and December, 1968. It is undisputed that, from that time, Austin Building "assume[d] full responsibility for the safety of the work hereunder and all liability for injury or damage to the person or property of any and all persons whomsoever in any way growing out of the performance of this Contract. . . ." (Doc. 2-1 at 31-32 of 81, ¶ 3). For

purposes of the instant motion, it is also undisputed that, at least until the anti-indemnity statute became effective November 1, 2006, PSO had the right to indemnity for such losses or damages, as well as costs of defense, paid by PSO. (*See id.*). In its motion, Austin Power also does not dispute that, had PSO paid the settlement amount and costs of defense for the McDoulett litigation at any time in the 38 years between 1968 and 2006, PSO would have had a contractual indemnity right for those payments under the Contract. In the absence of clear legislative intent for retroactive application, it is not appropriate to determine those contractual rights were voided simply because the suit and payment of damages – which arose from the asbestos exposure in 1968 – came after the statute's effective date.

IT IS THEREFORE ORDERED that the defendant's motion for judgment on the pleadings (Doc. 18) is **denied**.[3]

SO ORDERED this 30th day of March, 2016.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that, in the "Conclusion" of PSO's response to the motion, it requests that the Court "enter judgment in PSO's favor." (Doc. 19 at 24 of 26). While the Court has denied Austin Power's motion for judgment on the pleadings, PSO itself has not moved for judgment. Also, in its reply brief, Austin Power has argued that judgment for PSO would be premature because Austin Power "anticipates it will show the Court later in this litigation, should the present threshold motion be denied, that PSO is entitled to nothing even separate and apart from [*Okla. Stat.* tit. 15,] § 221." (Doc. 20 at 2). The Court declines to enter judgment for PSO at this time.